Good morning and may it please the court. My name is Lawrence S. Lesburg from Gibbons, B.C. and I represent the defendant appellant, David Evdokimow, in the first matter before the court today. I would respectfully request two minutes for rebuttal, Judge. Go ahead, sir. Thank you. Let me just say it's great to be back before this awesome panel. This case is about whether and under what circumstances a defendant may introduce evidence they filed amended returns and paid all of his taxes and more, interest and penalties, in a tax evasion case. This court has long held that given the specific intent requirement of tax evasion cases, a defendant's remedial actions are relevant and admissible when they are of, quote, any probative value in establishing his state of mind at the time of the alleged criminal acts. And this is the case the court held in Storr back in 1952 when the defendant has, quote, promptly filed an amended return and made payment of the additional sum owed. So let's start with Storr then. So it seems like Storr, like 403, calls for district courts to weigh probative value against the risk of unfair prejudice, jury confusion. That seems to be an exercise that inherently involves discretion. Why then should we have plenary review here? Two reasons. First, because there is a fundamental legal issue that is presented by this case that this court has to decide. And that is fundamentally the meaning of the word promptly. Or more to the point, what are the circumstances that are utilized in determining whether a filing is prompt? What the district court held here was that because Dr. F. Docomo filed his amended return and paid his taxes 17 months after the subpoena in this case, albeit a year before he was indicted, that that was not sufficiently prompt. But what the court did not consider in deciding the question of promptness was two things. Number one, what other actions Dr. Docomo had taken in the interim and what the relevance of those actions was. That is to say, the evidence was that after being subpoenaed by the, after receiving a subpoena and therefore being put on notice that there could potentially be something wrong, he immediately hired a new accountant and set about to unravel this very complex tax scheme. He provided documents promptly to the government and he went about the process of undoing what had occurred before. That process took 17 months. Well, in the Beavers case, as well as Storrs, Beavers I think was a tax case too. It was. And we repeatedly affirmed the finding of the district court on a 403 whether or not there was prompt payment. And how do we justify that with Storrs and Beavers, which have affirmed the, this type of conduct, have affirmed the 403 finding? Right. There's no doubt, Judge Cowen, that typically this court defers with regard to the 403 findings. But to the extent that there's a specific legal issue that's presented, and what I'm arguing to the court today, is that this case cries out for this court to provide some guidance, which hasn't been provided in more than half a century now, to district courts about what has to be done in order for the evidence to be the least bit probative. And the least bit probative is the standard. So that means that the first thing you want us to rule is it's plenary and not abuse of discretion. Correct. And then you want us to say that 17 months isn't what we should be looking at specifically. Not alone. Well. Not alone. 17 months is relevant. But the import of the 17 months... Well, I understand you want us to take into account that he took other actions. You know, he hired another accountant, he worked diligently, and so forth. But one of the things that we've got to come to is whether 17 months is just... Well, the first thing we have to, I think, come to is whether it's plenary or abuse of discretion. Because I think if we applied abuse of discretion, you'd say it's a tougher road to hoe, right? Always. Obviously. Right. Okay. So we put that aside for a moment. And now you want us to sort of weigh timing. You know, timing is going to come up a lot today. But in this case, the question is, okay, we're at 17 months. 17 months seems like a really long time, just saying. But what is a reasonable period of time? Because if 17 months is good, then frankly, almost anything would be good. No. Right. The answer to the question is, whether 17 months is a long time or a little time should depend. And what it should depend upon is two things. Number one, what all the circumstances are. And that's what the district court did not do. The court could impose a rule. I mean, what you're asking me, in essence, is what should the rule be about how long the period of time is? And what I want to urge, Your Honor, is that there should not be a rule. There should not be a black and white rule that says after 12 months, after 8 months, after 4... What it should be is a totality of the circumstances test. This court, as a general matter, issues per se rules that something is one side of the line and something is the other. Instead, in the interest of justice, you consider all the facts and circumstances. Among those facts and circumstances here, and most relevant to the question of his intent, is the actions he took immediately. So if he did nothing for 17 months, which, by the way, was the facts in store... Well, that's the government's position. The government's position, if I could sum it up for you, Your Honor, is that your claim of 5 proper remedial actions simply is not true. And I think the district court recognizes that. And therefore, imposed the... I don't think that's the government's position. I don't think the government is saying that it's not true that he didn't take these other actions. I think what the government is saying is that the district court was correct, as a matter of its discretion, in saying that on the one hand, granting the government's motion to preclude it. On the other hand, letting them sum up and say that he saved millions of dollars and left them defenseless against that charge. But leave that aside for the moment. The government is not taking the position, I don't think, and Mr. Romano is very articulate and can speak for himself, but their position is not that he didn't take those other actions. Their position is it's just too long under store. But the facts of store are very different. In store, there's no evidence that the defendant did anything for the 15 months in play there. Well, store is a different case. That was not a... That was an offer situation, wasn't it? Exactly. It was a different case than this completely. Exactly. I don't think that store is really precedential for this type of situation we have in this case. That's my view. I mean, the district court felt itself bound by store. But what Mr. Store did in that case was after 15 months, as you said, he made an offer in compromise. In 17 months, my client paid all the taxes, filed his returns, and in the meantime, in the situation I mentioned, the circumstances, the circumstances in part were that, you know, he had an accountant whom he blames for all this, and that's relevant. Because that shows that his defense really did go to his intent, to what he knew or didn't know. But, you know, he couldn't get records from her. What about the argument that if that were so, things could have been resolved much easier? And let me just elaborate a little bit. If you're informed that there's a tax issue, and it takes you totally by surprise, the first thing you do, presumably, is, oh my God, you know, I had no idea. Come in, say whatever, and say, I'm willing to pay whatever, I just need to know what the extent of it is. I'm not getting the sense from reviewing this that that's exactly what happened, because the argument is, how could it take 17 months if you knew, you know, once you know that there's a problem, how does it take 17 months to sort of unwind and figure it out? Well, he takes action immediately. The record here indicates that upon exactly what you say, he sees there's a problem, he sees that from the issuance of the subpoena, remember, long before he gets charged. So we're not talking about post-charge conduct, we're talking about post-notice conduct. And you'd agree post-charge conduct would clearly not... Unless there are circumstances in which the charges, the first time anybody knows that they're in trouble, but that's not this case, and it's not most cases. So in this case, and he does say, oh my God, and he hires a new accountant, but in order to actually, and he turns over such documents as he has within two months to the government, but he doesn't have all the documents. And he doesn't have all the documents because the accountant has all the documents. And the accountant, the record shows, was not... And by the way, it's important to note, for purposes of your Honor's review of this case, the accountant does not testify here. So we don't know what she would have said about that. But the accountant, it takes time for her to get the records together, and it's a complex scheme. And the government says, well, he knew what he did wrong. I mean, this is what the government always says, we don't have to tell you anything about the case, your client knows what he did. Mr. Westbrook, are you making an abuse of discretion argument? Your Honor... The court took into consideration, as I understand the record and as I've read the record, all of the points that you're making now. The timing factors, the elements with respect to the crime that was charged, the 10 elements. The court recognized that this testimony was a subsequent remedial measure, but determined that the prejudice under Rule 403 outweighed its probative value. It would be misleading to a jury. What's wrong with that opinion? Okay. I'm sorry to say at the outset, I think there are two things wrong with it. First, if you read Judge Holman's opinion, it does not reflect the thorough consideration that you've just described. What it reflects is a rote application of STOR and saying that 15 months was too long in STOR, 17 months is too long here. That's the import of his decision. That's a legal error. But beyond that, respectfully, and respectfully to Judge Holman, who's a good friend, the analysis that he does does not do a thoughtful balancing under 403 of the sort that this court uniquely has always required of district judges. And you know that because you're one of those. The type of analysis that should have been done was one that weighed prejudice against probative value and that also considered that the government had every opportunity to argue to the contrary, to bring all these facts up and say it wasn't fast enough and let the jury decide. Are you saying that the trial court did not identify and concern itself and add to the analysis the prejudicial value? In a sense, yes. And here's what I mean by that. The prejudice to the government, which is what it was measuring here, was the prospect of jury nullification. And the court said, I don't think a jury instruction will be enough. But what it didn't do was explain why. I mean, there were at least two types of jury instructions that the court could have given. One is it could have done what it should do in any such court remedial measure case, which is explain that this is being admitted for one purpose. And that purpose is to go to intent. You should not consider it for any other purpose. Each of your honors, who have been district court judges, have given just those sorts of instructions in the past. And in each case, it is presumed by this court on appeal that that instruction would be effective. Mr. Lusker, your point is very strong that you make on this balancing, whether it's a legal error or discretion was improperly exercised. But if we agree with you on that point, the conduct of your client in going up to paying the taxes and so forth left a lot to be desired. And why wouldn't we be satisfied in saying, or should we be satisfied in saying, this error, if any, is harmless at best. And therefore, it's highly probable it didn't have any effect on the verdict in the first place. So why should we even bother with it? Well, um... If we agree with you, why don't we move on to say harmless error? Right. And that's what the government is saying. The conduct of your client, I'm not too sure how the average juror would react to what he did. And there's a big question here as to whether we should let it go on board. Okay. I see I'm out of time. May I answer the question? Thank you, Your Honor. Don't worry, we have more questions for you. Okay, that's good. I had a feeling that we might not be strictly bound by the timeframes today. So first of all, obviously, Judge Cowen, this court is well aware of the standard for harmless error, which is the court must have a sure conviction that the error did not prejudice the defendant. But I would urge the court to examine the record carefully with regard to the points. And they're all listed on a couple of pages of bullet points in pages 36 to 38 of the government's brief as to why they claim that there's harmless error here. A number of them are fairly innocuous. For example, among the things they say is that he didn't pay his taxes. Well, that's tautological. That's what we're here for. Others go specifically to the role of the accountant. And that's what this case was fundamentally about. The defendant's defense here was that his accountant, Ginger Sweeten, told him that these were appropriate things to do. And maybe nobody would believe that. And in fact, when he was confronted on the stand and said, does this make any sense to you now? He said, now that it's explained to me, no, by the way, it should be noted. There's a subjective standard here, too. He's a non-American citizen. He was a foreign-born person. He's very focused on his practice. There was a lot of evidence that he's sort of a gullible. Well, there was proper evidence that he's a gullible sort of guy he is. He believed that what he was being advised by a professional was appropriate. There is contrary evidence. But that contrary evidence typically comes from fundamentally two people who testified and whose credibility was attacked. And so the part of the question that this court would have to have is that if this evidence had come in, wouldn't those credibility attacks have been more powerful or more effective? Or put another way, why didn't all this just go to the jury and let the jury decide? The government could have argued all that. And by the way, I should note in that regard, some evidence, one of the reasons that they argued that this was harmless there is that Dr. Docomo was allowed to put in certain aspects of this. So he was allowed to put in evidence, for example, that he provided documents to the government. Somehow the jury was able to sort through that with their arguments and decide that nonetheless he was guilty. But the point here is that if this evidence, which is of a different kind, was permitted to be before the jury, the result may very well have been different. So specifically, what does paying your taxes 17 months later say about your intent one month before the subpoena was served? Not as much as, if you put it that way, respectfully appearing exactly the same way as Judge Hillman, that's not the right question. The right question is, what does immediately upon finding out that you have a problem going to your accountant, working on getting it done, filing an end to return, paying it all within a 17 month period, meantime responding to subpoenas, that's the right question. Those four facts that you just put forth, three of them were before the jury, right? I had my oh my goodness moment, I got a new accountant, I made amended returns. The payment wasn't, obviously, that's why we're here. But all that was before the jury, right? So the argument was permitted to be made that I had an oh my gosh moment, this is totally outside my purview, I relied on somebody, I was taken. So, you know, you're able to make the critical argument. Tell me why it balances the other way. And here's why it balances the other way. And this is where the two arguments that we've made on appeal are interconnected. Because then in summation, the government says he saved millions of dollars, essentially arguing that he didn't pay his taxes. Now you could say that that's not exactly what they said, but read those words in their summation. What the government argues in summation is this defendant, why did he do this? He did it out of greed. He saved millions of dollars. The jury may well have been left with the impression that he stole from them, the taxpayers, by not paying his taxes. That's what renders this, that's what this particular evidence would have gone to rebut. So think about what the government did here. They move in limine to not let him tell the jury that he filed an amended return and paid his taxes. And then they sum up and they say he saved millions of dollars. He stole to the tune of millions of dollars. Can't the government argue that it suffered a substantial tax loss without implicating you in what you consider to be a perfect storm, whatever it was characterized as? Can't they say that there's a, can't they argue that there's suffered a tax loss by reason of this? The law of tax loss, which is not explored in these briefs, is such that paying amended returns later is not a defense. So all they have to show is that initially he failed to pay his taxes. Then they have their substantial tax loss issue. They don't have to show that there was ultimately a loss. And that's what they, the implication of the remarks in summation, after successfully moving to preclude him from showing that he paid his taxes, is to tell the jury he didn't pay his taxes. That he saved millions of dollars. That he bought houses and was greedy and did all these things with that money. When they well knew, by that time, that he had in fact paid his taxes and they had successfully kept from the jury, by virtue of their eliminating motion, that very fact. And so, Judge Greenway, the answer to your question about what's unique about that one single fact is that it becomes deceptive. And I think the irony, one irony should not be lost on us here, which is the government successfully persuaded the court in filing, in arguing its eliminating motion, that a jury instruction would not have worked. That jury nullification was, if you showed that you paid your taxes, was just too great of a danger. That even if the court had properly instructed the jury as to the way this evidence should be used, and even if the judge had properly said, don't nullify, you know, there's an anti-jury nullification instruction, which I oppose in every case and is nonetheless given, that even if the court had done that, that it could not have addressed this harm. And yet, they say, with regard, they resist the idea of a jury instruction when it comes to this particular, with their summation. So the defense says, please give me a jury instruction on, you know, the fact that he in fact did pay his taxes. No, they don't want that. They want to keep that fact from the jury. And then they argue on appeal that the jury instruction, that the summations are not evidence, is adequate to take care of that problem. Respectfully, it's contradictory to the position, and it's wrong. This was highly inflammatory evidence, or a highly inflammatory argument, that the defense was left defenseless against. And respectfully, I think it denies the doctrine of a fair trial. I just want to make sure that you completed your thought. At the very beginning, you said there were two problems, right? And the fundamental legal problem is the failure to define properly. And in the course of our discussion back and forth, I didn't know if you had formally made your point, too. So let me make formally my point, too, although of course it's in our papers. One of the things that Judge Hellman said that was of a legal nature, and that this court should scrutinize in a plenary fashion, is that admission of these kinds of remedial actions is, quote, an exception to the rule. That's respectfully not the law. The law that's pronounced in store is that this type of evidence should be admitted, that is, presumptively should be admitted, unless it is confusing or logically remote. And with regard to the question of logically remote, it said that is usually not the case, that that would be a usually undesirable approach. And of course, that makes sense. Because at the end of the day, what the parties want, what the court wants, is for all the facts to come out, that only truly prejudicial stuff, only really harmful stuff that can't be rectified by virtue of a jury instruction should be kept away from the jury. And here, I respectfully would submit that Judge Hellman didn't do that. But more to the point, the whole situation was exacerbated by virtue of this summation, as I've said. Counsel, did the government ever assert to the jury that the defendant never paid his back taxes? The government did not... In those words? No. What was it precisely that the government said that you think is the equivalent? The government said on five occasions, which I will concede only three of which were objected to, that the defendant saved money to the tune of or in the amount of millions of dollars. So the word was he saved or he kept... Or the words that were used by the government that he intended to save. They didn't say that, Your Honor. They didn't say he intended. That is not what they said. They said that he saved. The exact sentences, and you can see them in our briefs, and I can look them up if you want the exact language. But the words are that he saved, that it was done. And it was portrayed in a way that as I stand here today, that that was done. Now, the government does say that they limited their remarks to the period of the conspiracy between 2006 and 2012. But I would respectfully request that you read that summation and put yourself in the position of the jurors. There is no way that what comes out there is that they were saying that they saved that money during that period of time, but not now. The government suffered a loss. And that the government suffered a tax loss. And, you know, there is this whole argument that the parties argue about how that should be more of a sentencing matter and so forth. But either way, they talk about a loss to the government. They talk about a defendant saving money. They don't say intent. They say that there was a tax loss. And the implication is that as we sit here today, as we stand here today, as I, the government, am arguing to you on summation, that the defendant hasn't paid his taxes. You're right, they don't use those precise words. But that, I would say, is a very fair inference. Well, when you objected at trial, when the defendant objected at trial, didn't the trial judge give an instruction to the jury this was during argument? That the argument of counsel doesn't constitute evidence? It did give the instruction that summations do not constitute evidence. Again, respectfully, you know, in a situation where the government had argued that an instruction against jury notification or an instruction as to how the evidence should be used would not be sufficient, I would respectfully submit that that is a really healthy gesture. Well, don't we assume that juries follow the court's instruction? We do. And that assumption should have been built in in the first place to the court's response to the government's eliminating motion. One of the things that the defense said in response to the government's eliminating motion to preclude this evidence was you can instruct the jury properly and the jury will be presumed to understand it. And then the court, however, says, no, I'm going to keep this evidence out because I can't presume that the jury's going to follow that instruction. They won't be able to follow it. It's a double standard. And it deprives the defendant of a fair trial, respectfully. All right, thank you. Thank you all very much. Thank you. May it please the Court, John Romano for the United States. Let me just start with that last part. I'll start first with what comes first here. Sure. Why shouldn't we find that the district court turned a score on its head? It's a case which says that you're supposed to let it in unless it's highly, it's not probable, it's of little value. And there's a presumption in favor of letting this type of information in, not keeping it out. The district court seems to have taken the opposite view. I don't think that's what Storer says. Storer says if it had been promptly paid, maybe it should have been admitted. First of all, here we don't have prompt payment. But anyhow, I think what we have to look at Storer as is the same as what Rule 403 is. I mean, there's no special rule for subsequent payments of taxes. It's a Rule 403 analysis. Are you telling me that the fact that as soon as he found out that he had a tax deficiency, a double payment, and it was brought to his attention that the evidence is not reasonable for a jury to hear that he did whatever his new accountant said and that the properties can be. That's not evidential? Well, no one, including Judge Howland, said there was no relevance to this testimony. Well, yeah, but he said highly relevant. That was the essence of his defense. His position, believe it or not, is that he was taken for a ride by his then accountant, and that as soon as he found out that he was taken for a ride, he hired a new accountant, and they paid it as soon as he found out what the actual deficiency was. Your Honor, he paid it back between 17 and 20 months after learning about the investigation, which was 4, 5, 6, 7 years after he willfully evaded taxes. No, that's not the question. How soon did he pay it after he was told what the amount due was? It could be 27 months. There's no time limit here. The question is whether he acted reasonably under the circumstances of this case. He didn't know what he owed until the new accountant told him. Well, first of all, Your Honor, all of that is attorney proffer that is really not supported by the evidence. If you look at what he actually says in his response to the government's motion, which is on page A94, it's about this long, and it says, it took a long time, I worked as expeditiously as possible. That's what Judge Hillman had before him when he made this ruling. That's number one. Number two, respectfully, the question is not how fast did he act, did he act reasonably, all that. The question is a Rule 403 question. What was the probative value? What was the risks? And Judge Hillman heard hearing all this, he had a 40-page argument, he went back to Chambers, he read the cases, he recessed, he came back, and he explained. But that's the question, counsel. Isn't this probative value, that as soon as the accountant found out what he owed, he made payment? Well, again, Your Honor, that's not what the evidence is. The evidence is, he waited 17 to 20 months to pay. No, no, no. The question is, the number of months is of no consequence, it could be 27 months. The question is, how soon did he pay, after he found out what the deficiency was? Who knows? He didn't offer that. He said, I acted as fast as possible, as expeditiously as possible. There's no other evidence as to that. He didn't have an accountant affidavit saying I worked real hard and couldn't figure it out. There's no evidence that he called the IRS and said, oh my God, I'm working really hard for this, but I can't figure it out. None of that is in evidence. The only evidence is his proper. 17 to 20 months later, I paid. I worked as fast as possible. Let's take exactly what you've just said. Why isn't that probative of intent? Judge Hillman said it is probative. It's just not very probative. I mean, his courts have repeatedly said that evidence can go either way. Either you're covering up for what you did, or maybe you're showing some kind of mistake. You made a mistake. I didn't know. So if I'm understanding your position correctly, if the facts were, I learned about this, I went to my accountant on the 1st of September, and on September 15th, I wrote a check for whatever, $1.5 million, whatever the number is, you'd argue that was more probative. In 17 months, right? Right. Okay. Would it be admissible? Your Honor, that's a 403 issue for the judge to decide. Whether it would be admissible or not depends on what the countervailing circumstances were. And again, as this court has repeatedly said, you defer to what were the countervailing circumstances at that point in time that would have made it inadmissible under 403. Well, here, Your Honor, there's, again, the risk of confusion. The issue is not what was his state of mind 17 to 20 months later. The question is what was his state of mind six, seven years earlier when he was not paying these taxes. That's number one. Number two... Well, that's not true in absolute terms, right? Because you'd have to admit that if you learned on day one, September 1st, in my hypothetical, that there was a tax problem and you paid the taxes on September 2nd, that a certain inference could be drawn from those actions. It's an inference, but it's not, again, it's not what his state of mind is on the day he paid or the day he learned. The question is what was his state of mind when he was evading taxes? Was he willfully evading taxes? So you'd have to take that evidence from six, seven years later and go back and say, okay, how does that shed light on what he was doing when he was evading taxes? That's the first problem. The second problem, and I think Mr. Lester can really downplay this, is the nullification argument, which is a real, real issue here. As Your Honor ran into the court and DeMaria said, jury nullification is a basis for excluding evidence into Rule 403. And here the argument is simple. We paid. No harm, no foul. Big bad IRS is coming after this poor guy who paid not just what he owed, he paid penalties and he paid interest. You got more than you deserved. So acquit this man. How is this case any different than Caldwell? Acquit him with Caldwell. I'm familiar with Caldwell, but here the judge did a very real Rule 403 analysis. Well, I don't think he did. You read the record here, I don't think there was it. His defense is that as soon as he knew what was owed, he paid. So the question is, how soon he acted after he was told this? And his position is, it took him 17 months to find out, but as soon as he found out, he paid. And the only question, a judge could have charged a jury, ladies and gentlemen, we've all done it, all of us here,   you charge a jury, it's a state of mind of the defendant at the time of the tax return was made. It's a state of mind of the defendant at the time of the defendant's trial. He claims he thought he was relying on inadequate, as it happened to be, inadequate assistance. But he claims that he, that he made that up as soon as he found out what was the true amount he owed. As in Caldwell, the court said that the court did not do a proper Rule 403 analysis because they did away with the defense which the defendant had. Well, I think you have to distinguish between Caldwell, the court said there was no adequate assistance and there was no actual 403 analysis. This court, I think, stepped in and did a kind of plenary review of, because of Caldwell. Well, I'm not making what the court did here. I don't think that allies what the case is all about. Well, I don't, I really don't think that's a fair view of what Judge Solomon did here. I mean, again, put yourself back into, you're in the district court, you used to be on the district court, you don't sit there. I go back to the long opinion which District Judge Lacy wrote for this court. He said, you can't write a scholarly opinion every time you do a 403 analysis. You're in the middle of trial, you're starting trial. You have 403 issues all the time. Just come in with an argument for 403. Oh, no, you're wrong. You do a 403, you've got to set forth what your decision is based upon. Why something is of no value or prejudicial value or why something is, especially 403, you've got to find that this cannot possibly be any value or it's highly prejudicial. That's not, I don't think that's a fair reading, Your Honor. In Bailey, this court said if it has low probative value, then you only need a low risk. How is this low probative value in this case? Your Honor, it was 1720. Excuse me, listen to the question. How is it low probative value for a court to conclude when a defendant is claiming that he paid as soon as the money was due and it took him 17 months, 27 months? How is that low probative value? Your Honor, he paid it 17 to 20 months after learning about a criminal investigation. He didn't know what he owed at that time. Your Honor, we don't know when he learned what he owed. He hasn't proffered that information to Judge Hillman. But every court that has looked at this has said it has little to no value. And I think Judge Hillman was right in saying that it had little value. In the Ninth Circuit, this wouldn't even be an argument. It doesn't come in at all. Other courts have said, look, it has very little value because it's a real risk. 17 to 20 months later, after learning about a criminal investigation, he all of a sudden pays the money that's due. That's, I mean, that's essentially covering it up for his crime. And what are the risks? The risks are very, very real. No harm, no foul. That's the point he was trying to make throughout this trial. Any chance he had, he was trying to get this before the jury. Why? It's not really very powerful evidence, as Your Honor pointed out. He put in other evidence. I corroborated right away. I have a new account. I would also point out, Your Honor, he opened on, oh my gosh, when I got this subpoena, it was the first time I realized this. But somehow, during his testimony, he never got there, which makes me question, at least, whether he could have really said that truthfully. But he got all that before the jury. What he wanted was that last point, which was, no harm, no foul. Another point that the defendant raises here, can we fairly say in this case that, in summation, that the government didn't walk into the jury panel the concept that that money was not paid and it's still not paid? No. No? No. But didn't the government in its summation talk about the government loss and the other one the other words they use, which are sort of past tense. They didn't say a deficiency was reported. They said, they talked about tax loss and also other terms which would connote a past tense due and owing. You know, I don't think any jury listening to this summation would have thought, oh my gosh, he hasn't paid his taxes yet. And I would, let me first start by what the defendant says happened here. And he kind of finessed the argument. But I'll point you to some pages. Reply brief, page 19. The government attempts to explain away its improper argument that at the time of trial Evdokimo still owed money to the IRS. Page 24 of the reply brief. The government, in fact, asserted that Evdokimo's taxes remained unpaid. Reply brief, page 18. Permitting the government to comment falsely to the jury that Evdokimo never paid his arrears. Regular brief, page 4906. Repeated nature of the government's false statements that Dr. Evdokimo's taxes remained unpaid. Now I ask you, the government put the full summation in its appendix. Take a look at those pages. Take a look at what the government actually said here. And I have on page 42 to 44 of my brief excerpts, longer excerpts. And then take a look at the actual summations. The government repeatedly says between 2006 and 2010. Page 2221. Paid virtually nothing in taxes while this fraud was going on. Page 2242. Saving him millions of dollars between 2006 and 2012. Over and over again, the time frame is very clear. We're talking about the time frame of the indictment. The time frame of when this was going on. The lay juror sitting in the box and hearing this summation, you don't think that they're saying that this money is owed? No. Certainly they were never told it was paid. They were not told it was paid. There was no reason to come to any other conclusion that it was paid or not paid. Judge Shulman said why would jurors even think about whether it was paid or not paid? Well, I've had tax cases where they were paid and the question for the jury was not whether they were paid or not and you would charge the jury. Ladies and gentlemen of the jury, the question is at the time and finally, the return that he intended willfully and so forth to pay what he owed. But you never had that in this case because it was never brought up. Well, Your Honor, I have two answers to this. First of all, he could have asked for relief. If he thought that this was so damaging and again, I don't see that. Even Donnelly says you're not supposed to jump to the worst possible conclusion. Reading this donation, I don't see the jury jumping up and saying oh my God, he hasn't paid his taxes yet. Well, there is a site at the appendix 2238-39 attributed to the government on rebuttal. He was rich and he could have paid his taxes between 2006 and 2012. That's not really in dispute. But the truth is sometimes people that have a lot of money want more and then you go on. So, certainly Mr. Lustberg's argument with regard to the whole tax issue, I mean, that brings it to the fore. He could have paid his taxes if given the opportunity to put that on the record. He could have paid his taxes between 2006 and 2012 which is exactly what he could have done and he didn't. I mean, I thought what you and Judge Carroll were talking about was the inference the jury could draw that he hadn't paid and that Mr. Lustberg   taxes until 2017. He hasn't paid his taxes yet. I don't think the jury knows that he paid his taxes but they wouldn't judge him. They wouldn't but what other inference would they come to? Exactly. The only thing  say is that in 2006 and 2012 he didn't pay his taxes. And by the way, it was to the tune of millions of dollars. And by the way, he did spend it on houses and cars and trips and art. Right. The whole argument is it's just irrelevant because at that point in time take a snapshot of there, the taxes weren't paid and it's not relevant at all when he paid, whether it was two weeks later or 20 years later. But my point also would be that a jury listening to this summation and again read the entire summation would not have jumped to some kind of conclusion that this guy still hadn't paid. It wouldn't think either way. I don't think reading this. That's what Judge Hillman found. Listening to this summation the jury wouldn't think either way. You know why? Because no one has been talking about post-taxes. So you don't   the jury is going to jump to the worst possible conclusion. If the jury is sitting there and they could have concluded the taxes are not paid, do you think this jury is going to let this man walk out of court? Aren't they going to be highly prejudiced toward it? I don't think so, Your Honor. His point was I paid my taxes, that's really helpful to me. I don't know if the flip side is all that harmful. I don't think the jury reached that conclusion. Do you think a taxpayer like you is going to pay their taxes? I don't like it, but I don't know that I would expect that during a criminal case someone would go ahead and pay their taxes before they were convicted, so I don't think anything bad about it. Secondly, I would also point out that I didn't know this was going on, Ginger Sweeten was fooling me. Would that make any sense? The testimony was that Ginger Sweeten was paying $10,000 or $11,000 over the course of this scheme. Mr. Dr. Gotham was making millions of dollars. Yes, he was in on this. It didn't make any sense that he was being tricked by some accountant who was making millions of dollars at the same time. That was the response. Thank you so much. Thank you. Very, very briefly. The following testimony was made and was not qualified by anything having to do with the years 2006 and 2012 by the government. One, the scheme benefited him to the tune of millions of dollars. He saved himself millions of dollars. If you look at page 43 of the government's brief, the highlight, Mr. Romano says they do it at greater length. Look at it at greater length. It is not bounded in time. It is in the past tense. It is saying he did not pay. He saved himself millions of dollars by saying it at that time. The point is the government wants to say it is okay to do that after having argued very hard that if he had put in evidence that he had paid that was so prejudicial that it would have nullified whatever instructions the court gave. Our government wants to say he didn't pay. It is a fundamentally inconsistent position to move and eliminate, to preclude him from saying he paid and then to sum up and say he didn't pay and say that doesn't require even an instruction beyond the standard instruction that summations are not fair. If you do him learning of this, then you lose, that's it. Because intent is really the whole key. Does it shed light on intent? If it doesn't, or if we don't think it's either an abuse of discretion or if we look at it anew, then that's it. Your Honor, I think the summation would still be fundamentally unfair. So I think the answer to the question is no. I don't think that that, I think having kept that evidence out on grounds that it was, and I don't think anybody would really argue that it has zero probative value. I think the question is, in the context of, you know, and I think we can draw those inferences back, the fact that he took the steps he did, and again, we argue that the analysis is wrong, that more has to be considered than just whether he paid, that the whole sequence of events leading up to that has to be considered in the context of the      question  I don't think that the analysis is wrong, that more has to be considered than just whether he paid, that the whole sequence of events leading up to that has to be considered in the context of the question I don't think that the   that more has to be considered than just whether   the whole sequence of events leading up to that has to be considered in the context of the question I don't think that the analysis              considered in the context of the question I don't think that the whole sequence of events leading up to that has to be considered in the context of the